**AMERICAN–ARAB ANTI–DISCRIMINATION COMMITTEE, et al., Plaintiffs,**

**and**

**Aiad Barakat; Naim Sharif; Khader Musa Hamide; Nuangugi Julie Mungai; Ayman Mustafa Obeid; Amjad Obeid; Michel Ibrahim Shehadeh; Bashar Amer, Plaintiffs–Appellees,**

**v.**

**Janet RENO, Attorney General; Harold Ezell; C.M. McCullough; Doris Meissner, Commissioner, INS; Ernest E. Gustafson, Personally and in his capacity as past District Director of the Immigration and Naturalization Service; Richard K. Rogers, District Director, Personally and in his capacity as District Director of the Immigration and**

Naturalization Service; Gilbert Reeves, Personally and in his capacity as an Officer of the Immigration and Naturalization Service; Immigration and Naturalization Service, Defendants–Appellants.

Nos. 96–55929, 97–55479.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 23, 1997.

Decided July 10, 1997.

Douglas Letter, United States Department of Justice, Washington DC, for Defendants-Appellants.

David Cole, Center for Constitutional Rights, Georgetown University Law Center, Washington, DC, for Plaintiffs-Appellees.

J. Joshua Wheeler, The Thomas Jefferson Center for the Protection of Free Expression, Charlottesville, VA, for Amici Curiae.

Before: D.W. NELSON and CANBY, Circuit Judges, and TANNER, District Judge.*

D.W. NELSON, Circuit Judge:

The central issues in this case are (1) whether 8 U.S.C. § 1252(g), as amended by the recently enacted Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, applies retroactively; and (2) whether the provision eliminates federal jurisdiction over a case such as this one, in which aliens have filed a federal suit challenging deportation proceedings on First Amendment grounds before a final order of deportation has been issued. We conclude that subsection (g) applies to pending cases but that the provision does not bar jurisdiction in this case. Because subsection (g) states that it applies "except as provided in this section," we conclude that the amended version of 8 U.S.C. § 1252(f), which permits certain collateral challenges to INS action, also applies by incorporation. We find that subsection (f) allows the instant suit because the factual record for the Plaintiffs' First Amendment claims cannot be developed in administrative proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the decision of the Immigration and Naturalization Service ("INS") to commence deportation proceedings against seven native Palestinians and one native Kenyan affiliated with the Popular Front for the Liberation of Palestine ("PFLP"). The complete factual history of this case is set forth in this court's prior opinion affirming the grant of a preliminary injunction to six of the aliens on First Amendment grounds. See American–Arab Anti–Discrimination Committee v. Reno, 70 F.3d 1045, 1066 (9th Cir.1995) ("American–Arab I "). To summarize, briefly:

The eight named aliens in this case, Aiad Barakat, Naim Sharif, Khader Musa Hamide, Nuangugi Julie Mungai, Ayman Mustafa

---

* The Honorable Jack E. Tanner, Senior District Judge for the Western District of Washington, sitting by designation.

Obeid, Amjad Obeid, Michel Ibrahim Sheha-deh, and Bashar Amer, ("Plaintiffs"), have participated in PFLP events to varying degrees. The PFLP is an international organization with ties to Palestine, and which the district court concluded is engaged in a wide range of lawful activities, including the provision of "education, day care, health care, and social security, as well as cultural activities, publications, and political organizing." The government avers that the PFLP is an international terrorist and communist organization, but does not dispute the district court's finding that the organization conducts lawful activities.

In January, 1987, the INS arrested the Plaintiffs and initiated deportation proceedings against them. Six of the Plaintiffs in this case, Barakat, Sharif, Mungai, Ayman Obeid, Amjad Obeid, and Amer, ("the Six") were living in this country under temporary student or visitor visas at the time that this case was filed. The remaining two, Hamide and Shehadeh, were permanent resident aliens. The INS charged all of the Plaintiffs under the McCarran–Walter Act of 1952 ("1952 Act"), which provided for the deportation of aliens "who advocate the economic, international, and governmental doctrines of world communism." 8 U.S.C. § 1251(a)(6)(D) (1988). In addition, the INS charged the Six with non-ideological, technical visa violations. Former FBI director William Webster testified to Congress that " '[a]ll of them were arrested because they are alleged to be members of a world-wide Communist organization which under the McCarran Act makes them eligible for deportation.... [I]f these individuals had been United States citizens, there would not have been a basis for their arrest.' " *Hearings before the Senate Select Committee on Intelligence on the Nomination of William H. Webster, to be Director of Central Intelligence,* 100th Cong., 1st Sess. 94, 95 (April 8, 9, 30, 1987; May 1, 1987), *quoted in American–Arab I,* 70 F.3d at 1053.

The INS subsequently dropped the ideological charges against the Six and reformulated the 1952 Act charges against Hamide and Shehadeh. Shortly thereafter, INS regional counsel William Odencrantz indicated "that the change in charges was for tactical purposes and that the INS intends to deport all eight plaintiffs because they are members of the PFLP." *American–Arab I,* 70 F.3d at 1053.

Following the repeal of the 1952 Act, the INS commenced proceedings against Hamide and Shehadeh under the "terrorist activity" provision of the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978 (Nov. 29, 1990), codified as amended at 8 U.S.C. § 1251(a)(4)(B) (rendering deportable "[a]ny alien who has engaged, is engaged, or at any time after entry engages in terrorist activity").[1]

The Plaintiffs filed this federal action to contest the deportation proceedings on First Amendment grounds. They claimed that the INS had singled them out for selective enforcement of the immigration laws in retaliation for their constitutionally protected associational activity. The district court held that it lacked jurisdiction over the claims of Hamide and Shehadeh but granted a preliminary injunction staying the immigration proceedings against the Six. On appeal, this court upheld the injunction and concluded that the court had jurisdiction over the claims of Hamide and Shehadeh. *American–Arab I,* 70 F.3d at 1071. The district court then entered an injunction staying the proceedings against Hamide and Shehadeh.

The government now appeals the district court's decision refusing to dissolve the existing preliminary injunction and granting the injunction in favor of Hamide and Shehadeh. Relying on new evidence submitted to the district court following this court's decision in *American–Arab I,* the government argues that the deportation proceedings were initiated for permissible reasons. Specifically, the government cites to materials detailing

---

**1.** For the purposes of the 1990 Act, terrorist activity consists of the commission

in an individual capacity or as a member of an organization, an act of terrorist activity or an act which the actor knows, or reasonably

should know, affords material support to any individual, organization, or government in conducting a terrorist activity at any time.

8 U.S.C. § 1182(a)(3)(B)(iii).

the Plaintiffs' support of PFLP fundraising activities and argues that under the applicable First Amendment standard, the Plaintiffs may be sanctioned for this behavior.

In addition, while this appeal was pending, the government filed motions to dismiss the case both with the district court and with this panel. The government contends that 8 U.S.C. § 1252(g), as amended by IIRIRA, deprives the federal courts of jurisdiction over all claims such as those at issue here, except on review of final deportation orders. The district court has determined that the new statute does not eliminate jurisdiction in this case, and the appeal of the district court's decision has been consolidated with this case.

### STANDARD OF REVIEW

■ The interpretation of a statute is a question of law, which we review de novo. *United States v. Doe,* 109 F.3d 626, 629 (9th Cir.1997).

■ We review a decision regarding a preliminary injunction for an abuse of discretion. *Does 1–5 v. Chandler,* 83 F.3d 1150, 1152 (9th Cir.1996). A district court abuses its discretion "if the court bases its decision on an erroneous legal conclusion or on clearly erroneous findings of fact." *American–Arab I,* 70 F.3d at 1062.

### DISCUSSION

I. *Jurisdiction*

■ IIRIRA amends section 242(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(g), to provide:

(g) Exclusive jurisdiction

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien

arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Pub.L. No. 104–208, § 306(a). The government argues that subsection (g) applies retroactively and eliminates federal jurisdiction over this case at this stage in the proceedings. While we agree that subsection (g) applies, we hold that it does not deprive the court of jurisdiction in this case.

IIRIRA explicitly provides for the retroactive application of subsection (g).[2] Section 306(c) states that

the amendments made by subsections (a) and (b) shall apply to all final orders of deportation or removal and motions to reopen filed on or after the date of the enactment of this Act and *subsection (g) of section 242 of the Immigration and Nationality Act (as added by subsection (a)) [8 U.S.C. § 1252(g) ], shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act.*

Pub.L. No. 104–208, § 306(c) (emphasis added). Thus, the provision carves out an exception to the general rule, specified in section 309(c), that IIRIRA does not apply to pending cases.[3]

Two circuits already have drawn this conclusion. The D.C. Circuit recently held that in a federal suit challenging the execution of a deportation order, the provision governed even though Congress enacted IIRIRA "[s]ubsequent to the District Court hearing." *Ramallo v. Reno,* 114 F.3d 1210, 1213 (D.C.Cir.1997). And in a decision holding that the effective date of amended 8 U.S.C. § 1252(g) was the same as the rest of the IIRIRA amendments (April 1, 1997), the Seventh Circuit has concluded that "the ref-

---

**2.** As IIRIRA expressly addresses the retroactivity of the relevant jurisdictional provision, we need not apply the default rules elaborated in *Landgraf v. USI Film Prods.,* 511 U.S. 244, 280–81, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994).

**3.** Section 309(c) provides:
(c) Transition for Aliens in Proceedings
(1) General Rule that New Rules Do Not Apply.—Subject to the succeeding provisions of

this subsection, in the case of an alien who is in exclusion or deportation proceedings as of the title III–A effective date [April 1, 1997]-
(A) the amendments made by this subtitle shall not apply, and
(B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

erence to subsection (g) in section 306(c) is meant only to provide an exception to section 309(c)'s nonretroactivity, so that when IIRA comes into effect on April 1, 1997, subsection (g) will apply retroactively, unlike the other subsections." *Lalani v. Perryman,* 105 F.3d 334, 336 (7th Cir.1997). We follow the D.C. and Seventh Circuits and conclude that subsection (g) applies retroactively.

■ We also conclude, however, that subsection (g) incorporates certain exceptions when it applies to pending cases. Subsection (g) states that "except as provided in this [new] section, [8 U.S.C. § 1252]," no court can consider any claim arising from a decision of the Attorney General "to commence proceedings, adjudicate cases, or execute removal orders against any alien." The provision thus expressly contemplates the applicability of other jurisdictional amendments to 8 U.S.C. § 1252. It is true that retroactive application of the entire amended version of 8 U.S.C. § 1252 would threaten to render meaningless section 306(c) of IIRIRA, which provides that in general, the narrow set of jurisdictional reforms codified at 8 U.S.C. § 1252 do not govern in pending cases. Yet a reading of subsection (g) that did not incorporate any exceptions would contradict the plain meaning of the text of (g).

Moreover, such a reading would be illogical. Divorced from all other jurisdictional provisions of IIRIRA, subsection (g) would have a more sweeping impact on cases filed before the statute's enactment than after that date. Without incorporating any exceptions, the provision appears to cut off federal jurisdiction over all deportation decisions. We do not think that Congress intended such an absurd result. We believe that when it applies to pending cases, (g) must apply along with at least some of the other provisions of section 1252, as amended by IIRIRA.

We must consider, then, which provisions of the amended version of 8 U.S.C. § 1252 are incorporated by reference into subsection (g) and whether any of these provisions preserve federal jurisdiction in this case. One

candidate is 8 U.S.C. § 1252(f), which provides:

(f) Limit on injunctive relief

. . . .

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, *other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.*

Pub.L. No. 104–208, § 306(a) (emphasis added).[4] Because this case involves individual aliens against whom deportation proceedings have been initiated, subsection (f) would appear to allow federal jurisdiction over the Plaintiffs' claims.

In determining whether subsection (f) applies, and in interpreting its meaning, we are guided by the well-established principle that where possible, jurisdiction-limiting statutes should be interpreted to preserve the authority of the courts to consider constitutional claims. The Supreme Court has stated unequivocally that "serious constitutional question[s] ... would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) (internal quotation and citation omitted); *see also Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 681 & n. 12, 106 S.Ct. 2133, 2141 & n. 12, 90 L.Ed.2d 623 (1986) (construing Medicare statute as permitting judicial review of regulations promulgated under the statute); *Johnson v. Robison,* 415 U.S. 361, 373–74, 94 S.Ct. 1160, 1168–69, 39 L.Ed.2d 389 (1974) (interpreting statute appearing to bar all review of veterans-benefits determinations as permitting judicial review of constitutional challenges due to lack of "clear and convincing" evidence that Congress intended to eliminate review of constitutional

---

4. "Part IV of this subchapter" refers to statutory provisions governing inspection, apprehension, examination, exclusion, and removal of aliens. *See* 8 U.S.C. §§ 1221–1251.

claims). Under subsection (f), individual aliens would appear to be able to seek judicial review of constitutional claims such as those at issue here.

The government contends that subsection (g) alone applies and that the provision does not cut off federal review of constitutional claims because it allows courts to consider such claims on review of final orders of deportation. The difficulty with this position is that the text of (g) alone does not appear to authorize judicial review of final orders of deportation. The provision can be read as authorizing such review only if it is read in conjunction with other subsections, such as the amended version of 8 U.S.C. 1252(b)(9), which provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this chapter shall be available only in judicial review of a final order under this section.

Pub.L. No. 104–208, § 306(a). The government makes the alternative argument that if subsection (b)(9) governs, the provision clearly limits judicial review, including review of all constitutional claims, to final orders of deportation.

We disagree. Even if subsection (b)(9) applies along with subsection (g), we believe that subsection (f) must be incorporated as well, and that (f) must be read to preserve judicial review of constitutional claims such as the ones at issue here. Any other reading would present serious constitutional problems. As we determined in *American–Arab I,* and as the government has conceded, neither the immigration judge ("IJ") nor the Board of Immigration Appeals ("BIA") has the authority to consider a selective enforcement claim during a deportation proceeding. *American–Arab I,* 70 F.3d at 1055. Moreover, a selective enforcement claim is not purely legal but rather requires factual proof. *Id.* Thus, the factual record necessary to the adjudication of such a claim would not be available to a federal court reviewing a final deportation order. *Id.* at 1055–56.

In *McNary v. Haitian Refugee Center, Inc.,* the Supreme Court drew a similar conclusion. 498 U.S. 479, 483–84, 111 S.Ct. 888, 891–92, 112 L.Ed.2d 1005 (1991). At issue in *McNary* was a provision of the INA that the government argued limited judicial review to final orders of deportation. Because the factual record necessary to the consideration of the plaintiffs' constitutional and procedural statutory claims could not be developed in administrative proceedings, the Court construed the provision as preserving general federal jurisdiction over the claims at issue in the case. *Id.* at 493–94, 111 S.Ct. at 896–97.

The government's argument that 28 U.S.C. § 2347(b)(3) enables federal appellate courts to remedy the factfinding deficiencies of administrative deportation proceedings in cases such as this one is unpersuasive. Section 2347(b)(3) allows an appellate court reviewing an agency determination to transfer proceedings to a district court for additional factual development in certain circumstances. However, we have held that this provision is not available on review of deportation proceedings. *American–Arab I,* 70 F.3d at 1056–57; *Ghorbani v. INS,* 686 F.2d 784, 787 n. 4 (9th Cir.1982). Because the INA limits appellate review to the administrative record, the statute "precludes application of the procedures . . . that permit transfer of a case to a district court for a hearing, under circumstances set forth at 28 U.S.C. § 2347(b)(3)." *Id.* While IIRIRA repeals 8 U.S.C. § 1105a(a), which contained the provision cited in *American–Arab I* and *Ghorbani* confining appellate review to the administrative record, IIRIRA adopts the same requirement. 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based.") Thus, the statutory basis for *American–Arab I* and *Ghorbani* remains the same, and these decisions still control.

In addition, IIRIRA expressly forecloses the appellate courts from remanding such cases to the IJ for further factual development under a related provision, 28 U.S.C. § 2347(c) (allowing appellate court to remand to agency for further factual development in certain circumstances). *See* 8 U.S.C. § 1252(a)(1) (as amended). The gov-

ernment's argument that IIRIRA's express preclusion of section 2347(c) proceedings by negative inference allows proceedings under section 2347(b)(3) does not make sense because the express statutory elimination of section 2347(b)(3) proceedings then would have been unnecessary. Prior to the enactment of IIRIRA, while some circuits had allowed remand under section 2347(c), even those circuits which permitted remand to the agency under section 2347(c) did not allow proceedings under section 2347(b)(3). *See American–Arab I,* 70 F.3d at 1057; *Coriolan v. INS,* 559 F.2d 993, 1003 (5th Cir.1977). Thus, Congress needed to act only to cut off the availability of section 2347(c).

Nor does review of a final order of deportation by habeas corpus offer adequate redress for the Plaintiffs' claimed constitutional injuries. The limitations of the new statute on habeas relief remain unclear. *See, e.g., Duldulao v. INS,* 90 F.3d 396, 399 n. 4 (9th Cir.1996) (declining to reach issue of whether section 440(a) of Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), as incorporated by IIRIRA, limits habeas review); *see also Yang v. INS,* 109 F.3d 1185, 1196 (7th Cir.1997). Some form of statutory habeas relief may remain available, *see Fernandez v. INS,* 113 F.3d 1151, 1155 (10th Cir. 1997); *Salazar–Haro v. INS,* 95 F.3d 309, 311 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997); *Hincapie–Nieto v. INS,* 92 F.3d 27, 31 (2d Cir.1996), and, indeed, in certain cases habeas review may be constitutionally required, *see Chow v. INS,* 113 F.3d 659, 668 (7th Cir.1997); *Kolster v. INS,* 101 F.3d 785, 790–91 (1st Cir.1996). Some courts have relied on the likely availability of habeas to preserve the constitutionality of the jurisdiction-narrowing provisions of the new statute. *See, e.g., Ramallo,* 114 F.3d at 1214; *Chow,* 113 F.3d at 668. However, even assuming that habeas relief remains available, it would not provide a sufficient avenue for review of the Plaintiffs' claims in this case. Although habeas was available under the old statutory structure, in *American–Arab I* this court held that *prompt* judicial review of the Plaintiffs' claims was required because violation of Plaintiffs' First Amendment interests would amount to irreparable injury that "cannot be vindicated by post-deprivation remedies." *American–Arab I,* 70 F.3d at 1057.

In sum, we conclude that while subsection (g) applies to pending cases, it incorporates subsection (f). Moreover, even if (b)(9) is incorporated along with (f), we read (f) as permitting federal review of constitutional claims such as those at issue here, because no other avenues of meaningful federal review remain available. Accordingly, the district court may retain jurisdiction over this case.

## II. *Preliminary Injunction*

This court already has upheld the preliminary injunction in favor of the Six. In *American–Arab I,* we held that "[t]he aliens' First Amendment rights are subject to irreparable harm because of the prosecution, and they have a strong likelihood of success on their claim that the INS has selectively enforced the immigration laws in retaliation for their exercise of constitutionally protected rights." 70 F.3d at 1066. We reached this conclusion because we affirmed the district court's finding that the Plaintiffs had made out a prima facie case of selective enforcement by showing (1) others similarly situated were not prosecuted (disparate impact) [5] and (2) the prosecution was based on an impermissible motive (discriminatory motive). *Id.* at 1062. We determined that the Plaintiffs had made a sufficient showing of discriminatory motive by demonstrating that the government targeted them "because of their associational activities with particular disfavored groups," and because the government did not establish that the Plaintiffs had the "specific intent

---

**5.** The district court selected as a control group "those aliens who have either violated non-ideological provisions or are associated with terrorist organizations whose views the government tolerates." *American–Arab I,* 70 F.3d at 1063. Before the district court, the Plaintiffs introduced copious evidence that the government did not seek to deport aliens affiliated with groups such as the Nicaraguan Contras, the Afghanistan Mujahedin, the Mozambique RENAMO, anti-Castro Cuban groups, and the Vietnamese Montagnards, which have advocated violence and the destruction of property. The Plaintiffs also submitted evidence showing that the government rarely took action against nonresident aliens for technical visa violations.

to further [any alleged] ... illegal aims" of those groups. *Id.* at 1063 (quoting *Healy v. James,* 408 U.S. 169, 186, 92 S.Ct. 2338, 2348, 33 L.Ed.2d 266 (1972)). Following our decision, the district court granted an additional preliminary injunction that included Hamide and Shehadeh.

The government has now presented new evidence in the district court showing that the Plaintiffs participated in fundraising activities for the PFLP. The government argues that the submission of this evidence has two consequences: First, the government contends that there is no longer sufficient evidence to sustain the district court's finding of disparate impact. Second, the government maintains that the standard under which the district court analyzed the evidence of discriminatory motive is no longer applicable. In evaluating the preliminary injunction in favor of the Six, we need not consider either of the government's arguments. As applied to the preliminary injunction in favor of Hamide and Shehadeh, both arguments are without merit.

A. Preliminary injunction in favor of the Six

■ With respect to the preliminary injunction granted in favor of the Six, we need not address either of the government's arguments. The government has not demonstrated changed circumstances. *See Favia v. Indiana Univ. of Pennsylvania,* 7 F.3d 332, 337 (3d Cir.1993) (noting that modification of a preliminary injunction requires changed circumstances that would render continuance of injunction in its original form inequitable); *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 810 (9th Cir.1963) (same). Moreover, it is improper to use a motion to dissolve an existing preliminary injunction to "try ... to relitigate on a fuller record preliminary injunction issues already decided." *American Optical Co. v. Rayex Corp.,* 394 F.2d 155, 155 (2d Cir.1968).

The district court concluded, and the government does not appear to dispute, that "the government's new 10,000–page submission was available to the government at the time the preliminary injunction was entered; the government simply chose not to litigate the facts at that time." Up until that point,

the government had argued that the Plaintiffs did not possess the same First Amendment rights as citizens. Because the only change in circumstances is of the government's own making, resulting from its decision to change its litigation strategy, we conclude that it is equitable to continue the original injunction staying proceedings against the Six without consideration of the new evidence.

B. Preliminary injunction in favor of Hamide and Shehadeh

1. Disparate impact

■ The government contends that the district court's finding of disparate impact is clearly erroneous because the Plaintiffs have failed to produce sufficient evidence showing that the INS refrained from deporting fundraisers in other terrorist organizations. Yet the government does not dispute the district court's conclusion that the INS sought to deport the Plaintiffs because of mere membership in the PFLP. As Plaintiffs did show that members of numerous other organizations advocating violence and the destruction of property were not deported, the comparison with aliens who engaged in fundraising for other terrorist organizations is unnecessary.

Even if such a comparison were required, the Plaintiffs have produced sufficient evidence to this effect. The Plaintiffs identified Toryalai Ali, a permanent resident alien living in San Diego who represented a Mujahedin guerrilla organization and who contributes approximately half of his income to the group. In addition, the Plaintiffs introduced evidence to show that the government did not seek to deport aliens who distributed a newsletter designed to build support for the Nicaraguan contras and which included an appeal to send money to support the Nicaraguan Democratic Forces. The Plaintiffs also submitted asylum files obtained in discovery demonstrating that the INS did not move to deport 59 out of 65 members and material supporters of the Contras and Mujahedin.

The government's assertion that "the district court had no evidence regarding a proper control group for Hamide and Shehadeh,

who are permanent resident aliens" is also incorrect. As discussed above, the record contained evidence that Toryalai Ali, a permanent resident alien, was not deported despite his leadership role and financial contributions to a sub-group of the Mujahedin. The record contains evidence of numerous other cases of permanent resident aliens who did not face deportation proceedings despite their support for international organizations advocating violence and destruction of property.

The district court did not clearly err in finding that the Plaintiffs established disparate impact.[6]

### 2. Improper motive

■ The district court found that, even after the government made its supplemental evidentiary submission, there was "no evidence in the record that could have led a reasonable person to believe that any of the plaintiffs had the specific intent to further the PFLP's unlawful aims." The government does not contest this finding. Accordingly, for the purposes of the First Amendment analysis, we assume that the Plaintiffs did not possess specific intent.

The government now tries to evade the specific intent standard we articulated in *American–Arab I*. Relying on the new evidence of fundraising activity, the government contends that a more relaxed First Amendment inquiry is appropriate. Because activity, rather than mere association, is at issue, the government maintains that the case should be analyzed under the standard set forth in *United States v. O'Brien*, 391. U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (holding that government has more latitude in restricting expressive conduct than in curtailing pure speech).

Yet in *American–Arab I* we already considered this question. We emphasized that the government was required to show that the Plaintiffs had the "specific intent" to engage in illegal group aims because the Plaintiffs had demonstrated that they were targeted for their "associational *activities* with particular disfavored groups." 70 F.3d at 1063 (emphasis added). In making this statement, we had before us evidence that these associational activities included fundraising. Thus, we already have made it clear that targeting individuals because of activities such as fundraising is impermissible unless the government can show that group members had the specific intent to pursue illegal group goals.

*O'Brien* is inapplicable in a case such as this one, in which the restrictions are in effect content-based. *See RAV v. City of St. Paul*, 505 U.S. 377, 385, 112 S.Ct. 2538, 2543–44, 120 L.Ed.2d 305 (1992) (citing to *O'Brien* and noting that "[n]onverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses"). Here, the central issue is whether the government impermissibly targeted the Plaintiffs due to their affiliation with the PFLP, and did not so target aliens affiliated with other foreign-dominated organizations advocating violence and destruction of property. Thus, the stringent First Amendment standard articulated in *American–Arab I* continues to apply.

Moreover, the government has not challenged the factual finding made by the district court that the INS targeted the Plaintiffs for their mere association with the PFLP. Indeed, in the prior appeal the government conceded that citizens would not have been treated in the same fashion. *American–Arab*, 70 F.3d at 1063. Therefore, regardless of whether the government has demonstrated that the Plaintiffs were also targeted for fundraising activity, the district court's conclusion that the Plaintiffs have made a prima facie showing of the government's improper motive is not clearly erroneous.

---

**6.** The government's suggestion that the Supreme Court's recent decision in *United States v. Armstrong*, —— U.S. ——, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), upsets the disparate impact finding is without merit. *Armstrong* does not alter the standard for establishing disparate impact. Rather, the case holds that failure to make any showing that similarly situated others were not being prosecuted defeats the selective prosecution claim. *Id.* at ——, 116 S.Ct. at 1487. Here, as discussed above, the Plaintiffs submitted extensive evidence that the government did not seek to deport similarly situated others.

## CONCLUSION

For the foregoing reasons, we conclude that IIRIRA does not eliminate federal jurisdiction at this stage in the proceedings. We also affirm the district court's decision denying the government's motion to dissolve the preliminary injunction on behalf of the Six and granting the preliminary injunction on behalf of Hamide and Shehadeh.

AFFIRMED.