**Boupone MORISATH, A25–095–794, Plaintiff,**

v.

**Richard SMITH, District Director of Immigration & Naturalization Service, et al., Defendants.**

**No. C97–1239Z.**

United States District Court, W.D. Washington.

Dec. 24, 1997.

Robert Pauw, Gibbs & Houston, Seattle, WA, for Plaintiff.

Christopher Lee Pickrell, U.S. Attorney's Office, David B. Hopkins, U.S. Dept. of Justice, Hugh G. Mullane, U.S. Dept. of Justice, Office of Immigration Litigation, Washington, DC, for Defendants.

## ORDER

ZILLY, District Judge.

THIS MATTER comes before the Court on respondents' motion to dismiss for lack of subject matter jurisdiction, docket no. 5 and petitioner's motion for release from custody, docket no. 10. Having considered the motions together with all documents filed in support and opposition, as well as the parties' oral arguments, the Court enters the following order:

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Boupone Morisath is a twenty-two year old native and citizen of Laos. Mr. Morisath entered the United States as a refugee when he was five years old. He has lived in the United States since that time.

In January of 1994, Mr. Morisath was arrested by police in Anchorage, Alaska. He was driving a vehicle from which a passenger fired a gun. There were reports that the shooting was gang related. Information, pp. 5–6, INS reply memorandum, Ex. 1, docket no. 12. Mr. Morisath entered a plea of nolo contendre to the charges of Assault in the Third Degree and Misconduct Involving a Weapon.

In April of 1995, Mr. Morisath was sentenced to a two-year jail term, with eighteen months of his sentence suspended. Judgment and Order of Commitment/Probation, INS Reply Memorandum, Ex. 1, docket no. 12. In July of 1995, after Mr. Morisath was released from jail, the Immigration and Naturalization Service (the "INS") established bond in the amount of $10,000. Mr. Morisath posted a bond and was released from custody.

The INS initiated deportation proceedings against Mr. Morisath, alleging that he should be deported from the United States because of the conviction against him. Mr. Morisath conceded deportability. On February 14, 1996, the immigration judge found that Mr. Morisath could not seek a waiver of deportation pursuant to INA 212(c) because of his firearms conviction, especially because it involved a crime against a person. The Immigration Judge further found that Mr. Morisath was ineligible for either asylum or withholding of deportation because he has been convicted of a particularly serious crime. The Immigration Judge ordered Mr. Morisath's deportation to Laos. Petitioner alleges that the Immigration Judge, in making his determination, failed to allow Mr. Morisath an opportunity to present testimony concerning the facts and circumstances of his arrest.

Mr. Morisath filed a timely appeal with the Board of Immigration Appeals (the "BIA"). On May 28, 1997, the BIA dismissed Mr. Morisath's appeal. The Board found Mr. Morisath to be statutorily ineligible for 212(c) relief. BIA Decision, INS Reply Memorandum, Ex. 3, docket no. 12. The Board held

that Mr. Morisath's crime was presumed to be a particularly serious crime for purposes of the asylum and withholding statutes. The BIA applied the analysis from *Matter of Q–T–M–T*, Interim Decision 3300 (BIA 1996) which states:

> an alien convicted of an aggravated felony, as defined in the AEDPA, who has been sentenced to less than 5 years imprisonment, is subject to a rebuttable presumption that he or she has been convicted of a particularly serious crime, barring eligibility for withholding under section 243(h)(1) of the Act.

With regard to Mr. Morisath's conviction, the BIA found:

> The record of conviction in this case reflects that the respondent was convicted of felony assault for driving an automobile while a passenger fired a handgun into another vehicle in an apparent gang shooting. Crimes, such as this one, involving physical injury or potentially life threatening acts are more likely to be considered particularly serious. While the respondent argues he was not a member of a gang, we do not find any particular aspect of the applicant's case that would cause us to conclude that he does not pose a danger to the community and that this denial of withholding of deportation would cause us to be out of compliance with the Protocol.

BIA Decision, p. 3, INS Reply Memorandum, Ex. 3, docket no. 12.

The INS took Mr. Morisath into custody in July. The INS is awaiting appropriate travel documents from Laos for Mr. Morisath's deportation.[1] Mr. Morisath remains in detention in the Seattle INS detention facility.

According to the Transitional Changes in Judicial Review in § 309(c)(4)(C) of IIRIRA, Mr. Morisath had thirty days from the date of the BIA's decision within which to seek judicial review in the Ninth Circuit. Mr. Morisath has not sought such review. Mr. Morisath has, however, filed a *Soriano* motion[2] to reopen with the BIA. Mr. Morisath also filed an application for bond in accor-

---

1. The INS has stated that it will not physically expel the petitioner until this Court has ruled. INS's Motion to Dismiss, p. 2, docket no. 5.

2. If a deportee conceded deportability prior to the enactment of AEDPA in reliance on the availability of section 212(c) relief, he may file a *Soriano* motion for the limited purpose of contesting deportability.

dance with 8 C.F.R. 236.1(d)(1) with the INS District Director. On August 6, 1997, this request for release was denied. In the letter denying Mr. Morisath's release, the INS District Director informed Mr. Morisath that he could appeal the decision to the Board of Immigration Appeals within 10 days and cited 8 C.F.R. 236.1(d)(3)(i). *See id.* There is no evidence that Mr. Morisath has appealed the INS District Director's denial of Mr. Morisath's request for release on bond.

On July 29, 1997, petitioner Mr. Morisath filed in this Court a Petition for Writ of Habeas Corpus and Complaint for Mandamus and for Declaratory Judgment and Injunction. Mr. Morisath names Richard Smith, District Director of the INS; the INS; and Janet Reno, Attorney General of the United States, as defendants.

In response to this Petition, the INS has moved to dismiss the habeas petition for lack of subject matter jurisdiction.

Petitioner has moved for release from custody.

## II. DISCUSSION

### A. The Jurisdiction Issue

Whether the Court has jurisdiction to consider petitioner's claims is the threshold issue in this case. Respondent INS's argument is that if any court has jurisdiction, it is the Court of Appeals. Petitioner asserts that this Court has jurisdiction to hear petitions for habeas corpus. The Court concludes that it does have jurisdiction to consider petitioner Morisath's petition for habeas corpus.

Significant changes to immigration law have recently been enacted through the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, and the Illegal Immigration Re-

form and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, 110 Stat. 3009–570 (codified at 8 U.S.C. § 1101, *et seq.*). President Clinton signed the AEDPA on April 24, 1996 and IIRIRA on September 30, 1996. IIRIRA went into effect on April 1, 1997.[3] Respondent INS argues that provisions from both of these acts divest district courts of jurisdiction to consider habeas corpus petitions.

### 1. AEDPA § 440(a)

Prior to the enactment of the AEDPA and IIRIRA, petitioners could file pursuant to the Immigration and Nationality Act ("INA") § 106(a), 8 U.S.C. § 1105a(a), for judicial review of BIA decisions. Although INA § 106(a) provided that judicial review of a final order of deportation was to take place in the Court of Appeals, an alien held in custody pursuant to an order of deportation could obtain judicial review of the order of deportation through habeas corpus proceedings. INA § 106(a)(10), 8 U.S.C. § 1105a(a)(10). This habeas review was conducted in the district courts. *See Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir.1995). AEDPA § 440 amended INA § 106 as follows:

(a) Judicial Review.—Section 106 of the Immigration and Nationality Act (8 U.S.C. 1105a(a)(10)) is amended to read as follows:

"(10) Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense cover by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i), shall not be subject review by any court.[4]"

---

**3.** This date is deceptively simple in the circumstances of this case. Because petitioner Morisath's deportation proceedings began before IIRIRA's effective date, the general rule is that IIRIRA's provisions do not apply to his case. IIRIRA § 309(c). However, there are transition rules which do apply to his case. Transition rules that are particularly relevant to Mr. Morisath's case are IIRIRA § 309(c)(4), regarding transitional changes in judicial review, and IIRIRA § 303(b)(3), regarding transition period custody rules. Both of these provisions are discussed *infra*.

**4.** An almost identical version of AEDPA § 440(a) was incorporated in the IIRIRA transition rules, which apply to petitioner Morisath. IIRIRA 309(c)(4)(G) states:

[T]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date for which both predicate offenses are, without regard to

This provision has been held to apply retroactively. *See, e.g., Duldulao v. INS,* 90 F.3d 396, 399 (9th Cir.1996).

Several courts of appeals have concluded that pursuant to this language, they no longer have jurisdiction under § 106 of the INA, as amended by AEDPA 440(a), to review final orders of deportation entered against aliens convicted of certain criminal offenses. *See, e.g., Boston–Bollers v. INS,* 106 F.3d 352, 355 (11th Cir.1997) (stating that "we hold that section 440(a)(10) deprives this court of jurisdiction over [the] petition"); *Kolster v. INS,* 101 F.3d 785, 786 (1st Cir. 1996) (dismissing petition for review for lack of jurisdiction); *Salazar–Haro v. INS,* 95 F.3d 309, 311 (3d Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997); *Hincapie–Nieto v. INS,* 92 F.3d 27, 28 (2d Cir.1996); *Qasguargis v. INS,* 91 F.3d 788, 789–90 (6th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997); *Duldulao v. INS,* 90 F.3d 396, 400 (9th Cir.1996); *Mendez–Rosas v. INS,* 87 F.3d 672, 673 (5th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997). Nevertheless, many courts of appeals have left open the possibility that habeas corpus review remains available, in some court, despite AEDPA § 440(a). *See Duldulao v. INS,* 90 F.3d 396 (9th Cir.1996) (noting that while AEDPA § 440(a) rendered petitioner's final order of deportation immune to direct attack, the issue remained open as to whether § 440(a) precluded collateral habeas review)[5]; *American–Arab Anti–Discrimination Committee v. Reno,* 119 F.3d 1367, 1374 (9th Cir.1997) (noting that the limitations of IIRIRA and the AEDPA, as incorporated by IIRIRA, on habeas review remain unclear; "[s]ome form of statutory habeas relief may remain available, ... and, indeed, in certain cases habeas review may be constitutionally required."); *see also Chow v. INS,* 113 F.3d 659 (7th Cir.1997); *Kolster v. INS,* 101 F.3d 785 (1st Cir.1996); *Hincapie–Nieto v. INS,* 92 F.3d 27 (2d Cir.1996).

Furthermore, despite the language of AEDPA 440(a) stating that, in the case of a final order of deportation against an alien who is deportable by reason of having committed certain criminal offenses, there shall be no review "by any court," several district courts, including this Court, have held that they still have jurisdiction to consider writs of habeas corpus brought pursuant to 28 U.S.C. § 2241.[6] *See Application of Castellanos,* 955 F.Supp. 96 (W.D.Wash.1996); *Yesil v. Reno,* 958 F.Supp. 828, 837–39 (S.D.N.Y. 1997), *reconsideration denied,* 973 F.Supp. 372 (S.D.N.Y.1997); *Eltayeb v. Ingham,* 950 F.Supp. 95, 98–99 (S.D.N.Y.1997); *Veliz v. Caplinger,* No. Civ. A. 96–1508, 1997 WL 61456, at *2 (E.D.La. Feb. 12, 1997); *Powell v. Jennifer,* 937 F.Supp. 1245, 1252–53 (E.D.Mich.1996); *Dunkley v. Perryman,* No. 96 C–3570, 1996 WL 464191, at *2–*3 (N.D.Ill. Aug. 9, 1996); *Mbiya v. INS,* 930 F.Supp. 609 (N.D.Ga.1996). The majority of these courts have limited habeas review to situations which raise "substantial constitutional questions" or "challenge a fundamental miscarriage of justice."[7]

In *Mbiya v. INS,* 930 F.Supp. 609 (N.D.Ga.1996), the court reasoned that, in order to avoid finding that the revised § 1105a(a)(10) is unconstitutional under the Suspension Clause, it was necessary to find that 28 U.S.C. § 2241 preserves the writ of habeas corpus for aliens subject to deportation. *Id.* at 612 (citing *Ruckelshaus v. Mon-*

---

their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act as so in effect).

The Court notes that AEDPA § 440(a) refers to "judicial review," while IIRIRA § 309(c)(4)(G) refers to "appeal." For purposes of the analysis here, any distinction is not relevant.

**5.** The Court recognizes that the issue of whether district courts have jurisdiction to consider habeas corpus petitions is currently pending before the Ninth Circuit in *Magana–Pizano v. INS,* Nos. 97–15678 & 97–70384. Notwithstanding the pendency of that case, this Court believes it is necessary to make a decision regarding whether this Court has jurisdiction to consider petitioner Morisath's habeas corpus petition.

**6.** Section 2241 states that "[w]rits of habeas corpus may be granted by ... district courts." 28 U.S.C. § 2241.

**7.** There is actually an issue as to whether this habeas review is limited to situations wherein there is a fundamental miscarriage of justice. *See, e.g., Mojica v. Reno,* 970 F.Supp. 130 (E.D.N.Y.1997). This issue need not be resolved in the present matter because petitioner Morisath's situation does involve allegations of a fundamental miscarriage of justice.

*santo Co.,* 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880–81, 81 L.Ed.2d 815 (1984)). The court held, however, that to preserve the balance between the Suspension Clause and Congress' plenary authority to control immigration, "the Constitution requires only that [with respect to aliens subject to orders of deportation for having committed certain crimes,] the writ of habeas corpus extend to those situations in which the petitioner's deportation would result in a fundamental miscarriage of justice." *Id.*

In *Yesil v. Reno,* 958 F.Supp. 828 (S.D.N.Y.1997), the Court relied heavily on the Supreme Court's analysis in *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), in holding that the AEDPA did not repeal section 2241 and that, therefore, the district courts have habeas corpus jurisdiction pursuant to section 2241 to review final orders of deportation with respect to aliens " 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Yesil,* 958 F.Supp. at 837 (quoting 28 U.S.C. § 2241). In *Felker,* the Supreme Court held that Title I of the AEDPA did not repeal the Supreme Court's authority to entertain original habeas petitions filed pursuant to section 2241. The Supreme Court noted that the AEDPA did not make mention of section 2241 and the Court held that Title I of the AEDPA did not repeal section 2241 by implication. *Felker,* 518 U.S. at ———–———, 116 S.Ct. at 2338–39; *see also Ex Parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868) ("[r]epeals by implication are not favored."). Similarly, in *Chow v. INS,* 113 F.3d 659 (7th Cir.1997), the court noted that the wording of section 440(a) does not evidence Congressional intent to preclude all forms of judicial relief. While the court did not go so far as to hold that district courts have jurisdiction to consider habeas petitions, the court stated: "Because section 440(a) does not include this type of sweeping prohibition on judicial review of deportation orders, we will not read section 440(a) as foreclosing all avenues of judicial review." *Id.* at 668–69 (citing *Felker v. Turpin,* 518 U.S. 651, ———–———, 116 S.Ct. 2333, 2338–39, 135 L.Ed.2d 827 (1996)).

Further, Congress cannot eliminate habeas corpus review of final orders of deportation unless there is an alternative avenue for review. *Yesil,* 958 F.Supp. at 838–39 (citing *Heikkila v. Barber,* 345 U.S. 229, 234, 73 S.Ct. 603, 605–06, 97 L.Ed. 972 (1953)). The *Yesil* court noted that because the AEDPA stripped the courts of appeals of the jurisdiction to hear petitions for review, section 2241 must be retained to permit habeas review of deportation orders in the district courts. *Id.* at 839.

### 2. INA § 242(g)

■ Subsequent to passage of the AEDPA, IIRIRA was passed, making further amendments to the INA. Section 306(b) of IIRIRA repealed INA § 106 in its entirety. Nevertheless, IIRIRA § 306(a)(a)(1) still dictates that judicial review of final orders of deportation is in the courts of appeals. Furthermore, IIRIRA § 306(a)(a)(2)(C) incorporates the language of AEDPA § 440(a). Most pertinent to the issue of whether this Court has jurisdiction to consider petitioner Morisath's habeas corpus petition is IIRIRA § 306(a)(g) entitled "Exclusive Jurisdiction" which states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this act.

IIRIRA § 306(a)(g), INA § 242(g), 8 U.S.C. § 1252(g) [hereinafter INA § 242(g)]. Like AEDPA § 440(a), INA § 242(g) has also been held to apply retroactively. *See, e.g., American–Arab Anti–Discrimination Committee,* 119 F.3d 1367, 1371 (9th Cir.1997). The INS strenuously argues that INA § 242(g) precludes district court jurisdiction over writs of habeas corpus. The argument is not persuasive.

First, the Court notes that despite the sweeping language of INA § 242(g) stating that "no court shall have jurisdiction," claims alleging substantial constitutional violations are still subject to some judicial review. To hold otherwise would be problematic, because a statute that removes jurisdiction from all courts to vindicate constitutional rights would pose serious constitutional prob-

lems. *Ramallo v. Reno,* 114 F.3d 1210, 1213 (D.D.Cir.1997); *Mbiya v. INS,* 930 F.Supp. 609 (N.D.Ga.1996). Respondent INS concedes that there must be jurisdiction to consider habeas corpus petitions alleging substantial constitutional violations, yet contends that jurisdiction is in solely the courts of appeals. As support for this argument, the government has argued that *Fuchslocher v. INS,* 110 F.3d 1394 (9th Cir.1997), stands for the proposition that district court jurisdiction over immigration deportation decisions expired on April 1, 1997, when IIRIRA became effective. While the *Fuchslocher* court did note that the district court had jurisdiction before April 1, 1997, the court simply did not address the issue of whether the district court would retain jurisdiction after April 1, 1997. To further support its argument that habeas jurisdiction is solely in the courts of appeals, the INS asserts that one of the goals of IIRIRA is "to expedite the removal of criminal aliens from the United States by eliminating judicial review, not to delay removal by requiring aliens to start the review process in the district court rather than the court of appeals." *Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.1997), *cert. denied sub nom.,* —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997). However, notwithstanding this goal, there is nothing in INA § 242(g) to suggest that a court of appeals would have jurisdiction to consider habeas petitions any more than would a district court. Further, just as AEDPA § 440(a) did not explicitly repeal habeas review in the district courts pursuant to 28 U.S.C. § 2241, INA § 242(g) does not explicitly repeal such review either. This Court adopts the reasoning from *Ozoanya v. Reno,* 968 F.Supp. 1, 6–7 (D.D.C.1997), wherein the Court stated:

> It follows from *Felker* that if Congress had intended to eliminate the district courts' jurisdiction under 28 U.S.C. § 2241 to consider habeas corpus petitions filed by a certain class of persons in custody, it would have had to do so affirmatively and clearly. There is nothing in the language of either the AEDPA or the IIRIRA to suggest that Congress expressly repealed Section 2241, limited its scope or eliminated the jurisdiction of the district courts under that statute to consider petitions for writs of habeas corpus. Assuming that

Congress intended to and did eliminate the specific habeas corpus provisions previously contained in the INA through enactment of Section 440 of the AEDPA and Section 306 of the IIRIRA, this Court concludes that the vague and uncertain language of Section 306(a)(2) of the IIRIRA ("except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear ...") does not eliminate the recognized jurisdiction of the district courts under 28 U.S.C. § 2241 to hear the habeas corpus claims of any person in custody, including deportable aliens. *See Felker v. Turpin,* 518 U.S. at —— – ——, 116 S.Ct. at 2339–40.

. . . .

Because the IIRIRA has now eliminated the jurisdiction of the courts of appeals to hear petitions for review brought by aliens convicted of aggravated felonies, 28 U.S.C. § 2241 must be interpreted to permit habeas corpus in the district courts to review deportation orders of those convicted of such felonies. In sum, this Court concludes that the district courts' jurisdiction to hear claims brought by deportable aliens under 28 U.S.C. § 2241 survives the 1996 amendments to the INA.

Based on the foregoing discussion, this Court concludes that it has jurisdiction to consider petitioner Morisath's petition for habeas corpus so long as the petition asserts a fundamental miscarriage of justice or a substantial constitutional problem.

### 3. Petitioner Morisath Has Alleged a Fundamental Miscarriage of Justice

■ Applying the above standard, the Court must consider whether Mr. Morisath has alleged that there has been a fundamental miscarriage of justice. Because this Court finds that petitioner Morisath has raised an issue of fundamental due process, this Court does have jurisdiction to consider Mr. Morisath's habeas petition.

■ Mr. Morisath argues that the Immigration Judge did not allow Mr. Morisath to testify concerning the facts and circumstances of his arrest. *See* Petition for Writ of Habeas Corpus and Complaint for Manda-

mus and for Declaratory Judgment and Injunction, ¶ 15, docket no. 1; *see also* Petitioner's memorandum in support of request for release from custody, pp. 7–8, docket no. 10. The Ninth Circuit has stated that "[a]n alien in deportation proceedings must be afforded due process of law, including a fair hearing, and indispensable to a fair hearing are reasonable notice, the right to examine witnesses and to *testify* and to present witnesses and to be represented by counsel ...." *Hyun v. Landon,* 219 F.2d 404, 406 (9th Cir.1955) (emphasis added), *aff'd* 350 U.S. 990, 76 S.Ct. 541, 100 L.Ed. 856 (1956). Pursuant to *Hyun,* Mr. Morisath has a claim that there has been a fundamental miscarriage of justice. Accordingly, the INS' motion to dismiss is DENIED.

## B. Request for Release from Custody

■ Having determined that the Court has jurisdiction to consider petitioner Morisath's petition for habeas corpus, the Court turns to petitioner's motion for release from custody. According to the transition rules of IIRIRA, a criminal alien in Mr. Morisath's position may be released from custody if "the alien was lawfully admitted to the United States and satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding ...." IIRIRA § 303(b)(3)(B)(i). Petitioner Morisath contends that he meets these criteria, particularly because he was released on bond two years ago and during his release he complied with all bond requirements, worked productively, and proved that he is not a threat to the community. Mr. Morisath argues that the District Director's decision to hold Mr. Morisath without bond during the pendency of the court proceedings violates constitutional provisions. Petitioner Morisath has requested that the Court order his immediate release from custody.

Respondent INS argues that even if this Court determines that it has jurisdiction to consider petitioner Morisath's habeas petition, this Court, nevertheless, lacks jurisdiction because Mr. Morisath has failed to exhaust his administrative remedies. The INS contends that if Mr. Morisath disagrees with the INS District Director's decision not to grant Mr. Morisath release on bond, then he must file an appeal with the BIA pursuant to 8 C.F.R. § 236.1(d)(3). Until the BIA decides Mr. Morisath's appeal, the INS argues, Mr. Morisath has failed to exhaust his administrative remedies. *See Rashtabadi v. INS,* 23 F.3d 1562, 1567 (9th Cir.1994) (stating that there is no jurisdiction to consider issues not raised to the BIA).

■ Nevertheless, in the circumstances of this case, petitioner's failure to exhaust administrative remedies should not preclude judicial review. While, generally, an alien must exhaust administrative remedies before seeking judicial review of a deportation order, exhaustion is not required if an alien seeks relief not inconsistent with an order of deportation. *Cheng Fan Kwok v. INS,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037, *aff'd,* 392 U.S. 642, 88 S.Ct. 2271, 20 L.Ed.2d 1341 (1968). Nor is exhaustion required when a petitioner challenges the conditions of bond. *National Center for Immigrant's Rights v. INS,* 791 F.2d 1351, 1354 (9th Cir.1986), *vacated on other grounds,* 481 U.S. 1009, 107 S.Ct. 1881, 95 L.Ed.2d 489 (1987). Therefore, this Court has jurisdiction to consider Mr. Morisath's request for release from custody.

■ Petitioner Morisath argues that the District Director's decision to deny him release from custody violates his due process rights because he was never provided an individualized bond hearing. *See St. John v. McElroy,* 917 F.Supp. 243, 248 (S.D.N.Y. 1996); *Caballero v. Caplinger,* 914 F.Supp. 1374, 1378 (E.D.La.1996); *Kellman v. District Director United States INS,* 750 F.Supp. 625 (S.D.N.Y.1990); *Paxton v. U.S. INS,* 745 F.Supp. 1261, 1265 (E.D.Mich. 1990); *Agunobi v. Thornburgh,* 745 F.Supp. 533 (N.D.Ill.1990); *Leader v. Blackman,* 744 F.Supp. 500 (S.D.N.Y.1990). Respondent INS asserts that the District Director's individualized determination was sufficient to satisfy constitutional due process requirements. This written decision, however, is inadequate to satisfy due process. *St. John v. McElroy,* 95 CIV 9810(KMW), 1995 WL 753936, *5 (S.D.N.Y. Dec. 19, 1995) (stating that "[e]ven a valid written decision is no substitute for a hearing"). Petitioner Morisath is entitled to an individualized bond hearing.

Accordingly, while the Court does not order petitioner Morisath's release, the Court does remand this matter to the agency for the limited purpose of providing petitioner Morisath with an individualized bond hearing within thirty days of the date of this order. The agency is to determine, based on the standards set forth in IIRIRA 309(b)(3)(B)(i), whether, and under what conditions, petitioner Morisath may be released from custody pending the habeas corpus proceedings in this Court.

## III. CONCLUSION

Based on the foregoing discussion, the Court DENIES the INS motion to dismiss. While the Court DENIES petitioner Morisath's motion for release from custody to the extent that the Court does not order his immediate release from custody, the Court GRANTS his motion to the extent that the Court remands this matter to the agency for the limited purpose of conducting an individualized bond hearing. The Court retains jurisdiction over the remainder of petitioner Morisath's habeas corpus petition. Accordingly, the parties are ordered to confer on a briefing schedule regarding the merits of the habeas corpus petition and to advise the Court of this briefing schedule by January 31, 1998.

IT IS SO ORDERED.