114 F.3d 1210
 325 U.S.App.D.C. 2
 Marlena RAMALLO, Appellee,
v.
Janet RENO, in her official capacity as Attorney General and
Doris Meissner, in her official capacity as
Commissioner of the Immigration and
Naturalization Service, Appellants.
 No. 96-5265.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 3, 1997.
Decided May 27, 1997.
 
 [325 U.S.App.D.C. 3] Appeal from the United States District Court for the District of Columbia. (No. 95cv01851).
 Philip D. Bartz, Deputy Assistant Attorney General, U.S. Department of Justice, Washington, DC, argued the cause for appellants, with whom Frank W. Hunger, Assistant Attorney General, Philemina M. Jones, Assistant Director, Washington, DC, Michelle R. Slack, Lakewood, OH and Laura M. Friedman, Pepper Pike, Attorneys, were on the briefs.
 Richard L. Brusca, Washington, DC, argued the cause for appellee, with whom Robert S. Bennett, Katharine S. Sexton, and Catharine A. Hartzenbusch were on the brief.
 Before: EDWARDS, Chief Judge, WALD and TATEL, Circuit Judges.
 Opinion for the Court filed by Chief Judge EDWARDS.
 HARRY T. EDWARDS, Chief Judge:
 
 
 1
 Appellee Marlena Ramallo, a native of Bolivia, entered the United States in 1972; she became a lawful permanent resident in 1978. In August 1986, Ramallo pled guilty to conspiracy to import cocaine and thereafter served 5 1/2 months in prison.
 
 
 2
 In November 1986, due to her criminal conviction, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against Ramallo. During the course of these proceedings, the Government and Ramallo entered into an agreement, the terms of which are disputed. Ramallo claims that, in return for her cooperation in prosecuting drug traffickers and her waiver of objections to her deportability, the Government agreed not to deport her and to restore her status as a lawful permanent resident. In compliance with her understanding of the agreement, Ramallo withdrew her objection to deportability in the deportation proceedings. A deportation order was subsequently issued by an Immigration Judge. When the Government later attempted to execute the deportation order, Ramallo filed suit in the District Court for the District of Columbia, seeking enforcement of the agreement to restore her status as a lawful permanent resident. The District Court entered judgment in favor of Ramallo.
 
 
 3
 On appeal, the Government claims that, at the time it ruled on this case, the District Court had no jurisdiction to consider Ramallo's claims. Due to recent legislative developments, we need not decide this issue. Subsequent to the District Court's judgment, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996("IIRIRA"), amending section 242 of the Immigration and Nationality Act ("INA"). The IIRIRA undisputably deprives [325 U.S.App.D.C. 4] both district courts and courts of appeals of jurisdiction to hear this case.
 
 
 4
 As it is clear that this court lacks appellate jurisdiction over the subject matter of this case, a question remains as to the continuing validity of the District Court's judgment. In other words, because this court has no authority to review a matter of the sort here in issue, does the judgment of the District Court stand immune to challenge? We think not. We find that, in enacting the IIRIRA, Congress intended a pragmatic approach, leaving this court with residual jurisdiction to clear the decks of pending cases covered by the new statute. Accordingly, we find that IIRIRA grants us jurisdiction to vacate the District Court's judgment and remand with a direction to dismiss appellee's present claim before the court.
 
 I. BACKGROUND
 
 5
 Appellee Marlena Ramallo, a native of Bolivia, came to the United States in 1972 and became a lawful permanent resident in 1978. Ramallo was arrested in 1986 and, on August 1, 1986, she pled guilty to conspiracy to import cocaine, in violation of 21 U.S.C. § 963. As part of a plea agreement, she agreed to cooperate with officials of the U.S. Attorney's Office and the Drug Enforcement Agency ("DEA") in their investigations of unlawful drug trafficking. Ramallo served 5 1/2 months in prison on her drug conviction.
 
 
 6
 On November 21, 1986, the INS initiated proceedings to deport Ramallo, issuing an Order to Show Cause, in which it charged that Ramallo was subject to deportation due to her criminal conviction. Appellee's initial deportation hearing took place on February 25, 1987. After two continuances, Ramallo began to present evidence on April 6, 1988. After the April 6 hearing was adjourned, proceedings did not reconvene until May 10, 1988.
 
 
 7
 At the May 10 hearing, during a recess, an INS trial attorney, a DEA agent, Ramallo's attorney, and Ramallo met. At the meeting, the parties formed an agreement, the terms of which are now substantially disputed. The Government asserts that it agreed not to deport Ramallo for the period it would take for her to cooperate with law enforcement authorities; Ramallo contends that, in return for her cooperation, the Government agreed not to deport her at all and to restore her status as a lawful permanent resident. It is undisputed that, as a result of the meeting, Ramallo agreed (1) to cooperate with the DEA and the United States Attorney's Office in the investigation and prosecution of drug traffickers, (2) to concede that she was subject to deportation, (3) to withdraw her application for a waiver of deportation pursuant to section 212(c) of the INA, and (4) to waive an appeal of the Immigration Judge's decision. That same day, after Ramallo withdrew her application for relief pursuant to section 212(c) of the INA, the Immigration Judge entered an order of deportation.
 
 
 8
 On February 10, 1992, the INS, on Ramallo's behalf, filed a motion to reopen the deportation proceedings. The Immigration Judge granted the motion to reopen and gave Ramallo one week to file an application for waiver of deportation under section 212(c) of the INA. Ramallo, however, did not file the necessary papers; on April 15, 1992, the Immigration Judge denied Ramallo's request for relief, citing lack of prosecution.
 
 
 9
 On May 1, 1992, Ramallo filed a notice of appeal with the Board of Immigration Appeals, contesting the April 15, 1992 order denying her request for relief. On March 10, 1994, the Board of Immigration Appeals dismissed Ramallo's case for want of jurisdiction, holding that trips made by Ramallo outside the United States after the issuance of the deportation order divested the Board of jurisdiction. Ramallo appealed the Board of Immigration Appeals' decision to the United States Court of Appeals for the Fourth Circuit. The case in the Fourth Circuit has been held in abeyance, pending the outcome of the instant action.
 
 
 10
 On September 25, 1995, Ramallo filed the instant action in the District Court, seeking to enforce the May 10 agreement. She alleged breach of contract, promissory and equitable estoppel, and violations of the Fifth Amendment. The INS moved for dismissal on the grounds that the District Court lacked subject matter jurisdiction to review a final deportation order, claiming that, pursuant to [325 U.S.App.D.C. 5] section 106(a) of the INA, review of such an order is within the exclusive jurisdiction of the courts of appeals. Both the INS and Ramallo moved for summary judgment. The District Court held that it was not reviewing a final deportation order and, thus, that it had jurisdiction. The trial court then denied both motions for summary judgment, holding that an affidavit of an INS attorney created a genuine issue of material fact as to whether the Government, in the May 10 agreement, promised not to deport Ramallo and to restore her lawful permanent resident status in return for her cooperation with law enforcement authorities. The District Court later held an evidentiary hearing pursuant to Rules 43(e) and 52(a) of the Federal Rules of Civil Procedure to resolve the issue of whether the Government promised not to deport Ramallo. After taking testimony from the INS attorney, the District Court entered judgment in favor of appellee, finding that "[Ramallo] and the government, through its agents, servants and/or employees, entered into an agreement, in exchange for her testimony against numerous drug dealers, that she would not be deported and that she would be restored to her previous status as a Lawful Permanent Resident." Ramallo v. Reno, Civ. No.95-01851 (July 23, 1996) at 1-2, reprinted in Joint Appendix 399-400.
 
 II. ANALYSIS
 
 11
 If we accept Ramallo's argument that the action in District Court concerned an alleged contract between the Government and appellee--not a final deportation order--then, at the time it heard the instant action, the District Court may have had jurisdiction under 28 U.S.C. § 1331. The Government disputes this view, claiming that the case in District Court concerned the validity of a final deportation order and that, at the time the case was before the District Court, 8 U.S.C. § 1105(a) vested exclusive jurisdiction to review a final deportation order in the courts of appeals.
 
 
 12
 We need not determine whether the District Court erred in finding that it had jurisdiction to proceed on the merits of Ramallo's claim. Subsequent to the District Court hearing the case, Congress enacted the IIRIRA, amending section 242 of the INA. IIRIRA now undisputably deprives both courts of appeals and district courts of jurisdiction to decide the instant action. Section 306(a) amends section 242 of the INA by adding the following provision:
 
 
 13
 EXCLUSIVE JURISDICTION.--Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA].
 
 
 14
 8 U.S.C. § 1252(g) (emphasis added). The instant action arises from "the decision or action" of the Attorney General to execute a removal order against Ramallo and, thus, falls squarely within the express terms of the newly amended Section 242.
 
 
 15
 As it is clear that we lack jurisdiction over the subject matter of the instant action, we are faced with the question of whether we must now allow the District Court's decision to stand. To hold that we lack jurisdiction to enter any order affecting the judgment of the District Court would create an anomalous situation: a judgment of the District Court, with respect to a matter over which it now has no jurisdiction to hear, would escape appellate review, because the newly amended section 242 took effect after the issuance of the decision in the District Court. We doubt that Congress meant to countenance such a result. Rather, given the firm command of 8 U.S.C. § 1252(g), we believe that Congress intended to afford this court residual jurisdiction to clear the decks of cases in which the District Court has entered judgment, but in which there can be no review by the Court of Appeals due to its lack of jurisdiction pursuant to IIRIRA.
 
 
 16
 In the peculiar circumstance of this case, our jurisdiction is something akin to an appellate court's jurisdiction when a case becomes moot between the time a district court judgment is entered and the time it arrives at the appellate court for review. In United States v. Munsingwear, Inc., 340 U.S. 36, 71 [325 U.S.App.D.C. 6] S.Ct. 104, 95 L.Ed. 36 (1950), the Supreme Court held,
 
 
 17
 The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss. That was said in Duke Power Co. v. Greenwood County, 299 U.S. 259, 267[57 S.Ct. 202, 205, 81 L.Ed. 178] to be "the duty of the appellate court." That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance. When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary.
 
 
 18
 Id. at 39-40, 71 S.Ct. at 106-07 (footnote omitted); see also U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 25 n. 3, 115 S.Ct. 386, 391 n. 3, 130 L.Ed.2d 233 (1994) (holding that "mootness by happenstance provides sufficient reason to vacate"). Following this line of analysis, we hold that the IIRIRA does not strip us of the authority to vacate the District Court's judgment, which was preliminary, and to remand with a direction to dismiss.
 
 
 19
 IIRIRA's deprivation of jurisdiction raises no constitutional problem in this case. A statute that removes jurisdiction from all courts to vindicate constitutional rights poses serious constitutional objections. See Bartlett v. Bowen, 816 F.2d 695, 703 (D.C.Cir.1987) ("In our view, a statutory provision precluding all judicial review of constitutional issues removes from the courts an essential judicial function under our implied constitutional mandate of separation of powers, and deprives an individual of an independent forum for the adjudication of a claim of constitutional right.").[1] However, we need not decide whether the IIRIRA has such an effect, or, if it does, whether it is constitutional, because, as the Government concedes, habeas review remains available to appellee to raise substantial constitutional questions. Cf. Yang v. INS, 109 F.3d 1185, 1196 (7th Cir.1997) (holding that section 306(a) of the IIRIRA deprives courts of jurisdiction over statutory habeas claims but, of course, leaves constitutional habeas intact). Appellee thus retains the right to pursue claims of constitutional infirmity on habeas.
 
 III. CONCLUSION
 
 20
 For the reasons stated above, we vacate the District Court's judgment and remand with a direction to dismiss appellee's present claim before the court.
 
 
 
 [1]
 See also Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), where the Court held:
 We emphasized in Johnson v. Robison, 415 U.S. 361[94 S.Ct. 1160, 39 L.Ed.2d 389] (1974), that where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear. Id., at 373-74[94 S.Ct. at 1168-69]. In Weinberger v. Salfi, 422 U.S. 749[95 S.Ct. 2457, 45 L.Ed.2d 522] (1975), we reaffirmed that view. We require this heightened showing in part to avoid the "serious constitutional question" that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim. See Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 681, n. 12[106 S.Ct. 2133, 2141 n. 12, 90 L.Ed.2d 623] (1986).
 Id. at 603, 108 S.Ct. at 2053.