# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 14, 2005       Decided April 11, 2006

No. 04-1352

VIRGIN ISLANDS TELEPHONE CORPORATION,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

AT&T CORPORATION, ET AL.,
INTERVENORS

---

On Petition for Review of an Order of the
Federal Communications Commission

---

*Helgi C. Walker* argued the cause for petitioner. With her on the briefs were *Gregory J. Vogt*, *Eve Klindera Reed*, and *Kelion N. Kasler*.

*Scott H. Angstreich* argued the cause for intervenors and *amici curiae* United States Telecom Association, et al. in support of petitioner. With him on the briefs were *Michael K. Kellogg*, *Sean A. Lev*, *Stuart Buck*, *Richard A. Askoff*, *Daniel Mitchell*, *Gerard J. Duffy*, *Karen Brinkmann*, *Bennett L. Ross*, *James D. Ellis*, *Gary L. Phillips*, *Michael E. Glover*, and

*Edward Shakin*.

*Richard K. Welch*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief was *Thomas O. Barnett*, Acting Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson* and *Steven J. Mintz*, Attorneys, and *John E. Ingle*, Deputy Associate General Counsel, Federal Communications Commission.

*Judy Sello, Mart Vaarsi, David W. Carpenter, David L. Lawson,* and *Joseph R. Palmore* were on the brief of intervenor AT&T Corp.

Before: SENTELLE, RANDOLPH and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: The Virgin Islands Telephone Corporation ("Vitelco") provides local telephone service in the U.S. Virgin Islands. AT&T, like all providers of long-distance phone service, pays interstate access charges to Vitelco when Vitelco completes AT&T's customers' calls to the Islands. At issue in this case are the rates that Vitelco charged AT&T for this service from July to December 1997.

Vitelco filed with the Federal Communications Commission a "streamlined" tariff for this period in June of 1997, pursuant to 47 U.S.C. § 204(a)(3) ("*July 1997 Tariff*"). At AT&T's behest, the Commission "suspend[ed] [Vitelco's] tariff filing[] for one day and initiate[d] an investigation into the lawfulness" of the tariff. *1997 Annual Access Tariff Filings*, 13 F.C.C.R. 5677, 5702 (1997) ("*Suspension Order*"). One month later, the Commission "reconsider[ed] on [its] own motion" the suspension and investigation. *1997 Annual Access Charge Filings*, 12 F.C.C.R. 11,417, 11,449 (1997) ("*Reconsideration Order*"). In the order under review, the Commission found that

its suspension of Vitelco's tariffs, although later "reconsidered," was nevertheless sufficient to prevent the streamlined tariff from being "deemed lawful" under 47 U.S.C. § 204(a)(3). Vitelco therefore was liable to AT&T for damages resulting from its overearnings during the period covered by the *July 1997 Tariff. AT&T Corp. v. Virgin Islands Tel. Corp.*, 19 F.C.C.R. 15,978 (2003) ("*Order*"). Vitelco challenges this order on two grounds: first, that AT&T's complaint to the Commission was untimely, and, second, that the Commission erred in finding that Vitelco's *July 1997 Tariff* was not "deemed lawful" and that Vitelco was liable for damages.

I.

The Commission must ensure that rates for telecommunications service are "just and reasonable." 47 U.S.C. § 201(b). The Commission does this duty primarily by reviewing the tariffs that communications providers file, both before and after the tariffs become effective. *See generally* PETER W. HUBER ET AL., FEDERAL TELECOMMUNICATIONS LAW § 3.12 (2d ed. 1999).

Courts adjudicating ratemaking cases have long drawn a distinction between "legal" and "lawful" tariffs. *See, e.g., Ariz. Grocery Co. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 284 U.S. 370, 384 (1932). A *legal* tariff is a tariff that is "procedural[ly] valid[]," *ACS of Anchorage, Inc. v. FCC*, 290 F.3d 403, 410 (D.C. Cir. 2002) – it has been filed with the Commission, the Commission has allowed it to take effect, and it contains the published rates the carrier is permitted to charge. A *lawful* tariff is a tariff that is not only legal, but also contains rates that are "just and reasonable" within the meaning of § 201(b). *See ACS of Anchorage*, 290 F.3d at 411; *Ariz. Grocery*, 284 U.S. at 384; *Implementation of Section 402(b)(1)(A) of the Telecomms. Act of 1996*, 12 F.C.C.R. 2170,

2182 (1997) ("*Streamlined Tariff Order*") ("[A] rate is 'lawful' only if it is reasonable."). There are two ways for a merely legal tariff to become substantively lawful. The tariff can be so adjudged in a hearing before the Commission,[1] or it can be "deemed lawful" if it is filed in a "streamlined" manner pursuant to 47 U.S.C. § 204(a)(3).[2] *See ACS of Anchorage*, 290 F.3d at 411; *Streamlined Tariff Order*, 12 F.C.C.R. at 2182 ("[A] streamlined tariff that takes effect without prior suspension or investigation is conclusively presumed to be reasonable and, thus, a lawful tariff during the period that the tariff remains in effect.").

---

[1] This hearing may be conducted by the Commission upon its initial review of a tariff, 47 U.S.C. § 204(a)(1); as part of a rate prescription proceeding, *id*. § 205; or, as in this case, upon receiving a complaint that a carrier has charged unreasonable rates, *id*. § 208.

[2] Section 204(a)(3) provides, in pertinent part, that a tariff filed in this manner "*shall be deemed lawful* and shall be effective 7 days [for a rate decrease] or 15 days [for a rate increase] after the date on which it is filed with the Commission unless the Commission takes action under [47 U.S.C. § 204(a)(1)] before the end of that 7-day or 15-day period." *Id*. § 204(a)(3) (emphasis added). Section 204(a)(1) grants the Commission authority to "enter upon a hearing concerning the lawfulness [of a tariff]." *Id*. Pending the outcome of the hearing, the Commission may suspend the operation of the tariff for up to five months. If the tariff goes into effect before the conclusion of the hearing, the Commission can require the carrier to keep "accurate account of all amounts received" under the tariff; this facilitates refunds in the event the tariff is declared unlawful. *Id*.

If a merely legal tariff is found unlawful – if it contains rates that are not "just and reasonable" – the carrier is liable for its overcharges. A carrier charging rates under a lawful tariff, however, is immunized from refund liability, even if that tariff is found unlawful in a later complaint or rate prescription proceeding. Refunds from lawful tariffs are "impermissible as a form of retroactive ratemaking." *ACS of Anchorage*, 290 F.3d at 411. Remedies against carriers charging lawful rates later found unreasonable must be prospective only. *See id*; *Streamlined Tariff Order*, 12 F.C.C.R. at 2182-83.

The Commission determines whether certain carriers—including Vitelco—are charging "just and reasonable" rates by prescribing a maximum *rate of return* and "leav[ing] it to the carrier to set its rates at a level designed to yield up to the prescribed rate of return." *MCI Telecomms. Corp. v. FCC*, 59 F.3d 1407, 1409 (D.C. Cir. 1995). Violations of rate of return prescriptions are *per se* violations of the duty to charge only "just and reasonable" rates and give rise to liability for "overearnings." *Id*. at 1414.

Carriers regulated in this manner continue to file tariffs reflecting their actual charges. But they also file "monitoring reports" indicating their rates of return for a given period. The Commission evaluates rates of return over two-year periods. 47 C.F.R. § 65.701. The long review period "allows the Commission to monitor interstate access rates while still providing carriers an opportunity to respond to changing market conditions with mid-course rate revisions." *Virgin Islands Tel. Corp. v. FCC*, 989 F.2d 1231, 1237 (D.C. Cir. 1993) ("*Vitelco*"). Carriers therefore file both "interim monitoring reports" indicating any necessary adjustments during the monitoring period and "final monitoring reports" covering the duration of the enforcement period. 47 C.F.R. § 65.600(b). The Commission may base its enforcement only on the rate of return

for the complete monitoring period. *See Vitelco*, 989 F.2d at 1239-40. In *ACS of Anchorage*, we held that streamlined tariffs "deemed lawful" under § 204(a)(3) immunized rate of return carriers from damages liability, at least for those periods within the larger monitoring period during which the streamlined tariffs were in effect. 290 F.3d at 411-12.

## II.

The Communications Act requires "[a]ll complaints against carriers for the recovery of damages" arising from rate of return violations to "be filed with the Commission within two years from the time the cause of action accrues." 47 U.S.C. § 415(b). The Commission found that AT&T's cause of action against Vitelco accrued on September 30, 1999, when Vitelco filed its final monitoring report for the 1997-1998 period, and that AT&T's complaint, filed on September 10, 2001, was therefore within the two-year limitations period. *Order*, 19 F.C.C.R. at 15,984.

The Commission's finding was a straightforward application of its own rules and our caselaw. This court follows the "discovery of injury" rule to determine when the § 415(b) limitations period begins running. *See Communications Vending Corp. of Ariz., Inc. v. FCC*, 365 F.3d 1064, 1074 (D.C. Cir. 2004); *MCI*, 59 F.3d at 1417. We have specifically held that claims for damages against rate of return carriers accrue when the carrier files its final monitoring report. *See id*. This rule follows naturally from the FCC's mechanism for rate of return regulation. Because the Commission does not (and indeed cannot, *see Vitelco*, 989 F.2d at 1239) evaluate whether a rate of return violation has occurred until the end of the relevant monitoring period, *see* 47 C.F.R. § 65.701, it is not possible for any other party to have knowledge of the violation before then.

Vitelco argues that because AT&T is seeking damages only for 1997, it had all of the necessary facts to discover its injury when Vitelco filed its *interim* monitoring report for 1997.[3] The argument mistakenly conflates the issues of claim accrual and remedy. AT&T's complaint alleges that Vitelco exceeded its prescribed rate of return for the 1997-1998 monitoring period. *Order*, 19 F.C.C.R. at 15,978. This is as it should be. "Under the present system, the target 'authorized return' is a number that has meaning only in relation to the full two-year monitoring period." *Vitelco*, 989 F.2d at 1238. AT&T seeks damages only for 1997 because it acknowledges that Vitelco's 1998 streamlined tariffs were deemed lawful and therefore cannot give rise to refund liability. The *claim* is for overearnings during the entire monitoring period; the *remedy* is a refund of overcharges during the monitoring period not covered by "deemed lawful" tariffs.[4] AT&T had no legal claim until Vitelco filed its final monitoring report.

For similar reasons, Vitelco is mistaken when it asserts that the operation of § 204(a)(3) "cut[s] short" the monitoring period. *See ACS of Anchorage*, 290 F.3d at 413. In *ACS of Anchorage*, we expressed uncertainty over how the Commission

---

[3] Vitelco filed interim monitoring reports for the first six months of 1997 on September 30, 1997, and for the last six months of 1997 on March 30, 1998. *Order*, 19 F.C.C.R. at 15,984. In Vitelco's view, March 30, 1998, is the latest possible date on which AT&T's claim accrued, so AT&T's September 10, 2001, petition was untimely.

[4] The Commission may still impose its own remedy for overearnings during 1998; this remedy, if any, must be prospective rather than retrospective. *See Streamlined Tariff Order*, 12 F.C.C.R. at 2183.

8

would address rate of return violations for periods covered by "deemed lawful" tariffs. *Id.* at 413-14. In the intervening years, the Commission has chosen to keep its system of two-year periods intact. The apparent effect of this choice is to "cut short" only a complainant's right to recover retrospective damages.[5] The Commission still evaluates earnings with respect to a two-year period, and AT&T's claim could not accrue until this evaluation took place.

## III.

Section 204(a)(3) states in relevant part that streamlined tariffs "shall be deemed lawful . . . unless the Commission takes action under [47 U.S.C. § 204(a)(1)]" within fifteen days after the streamlined tariff is filed. Ten days after Vitelco filed its tariff, the Commission – through its Common Carrier Bureau – suspended it for one day and initiated an investigation into its lawfulness. *Suspension Order*, 13 F.C.C.R. at 5702. About a month later, the Commission, again operating through its Common Carrier Bureau, "reconsider[ed]" its previous decision pursuant to it own rules and "decline[d] to investigate" the tariff provisions. *Reconsideration Order*, 12 F.C.C.R. at 11,449; *see* 47 C.F.R. § 1.108.

In this case the Commission ruled that its suspension of the tariff and its initiation of an investigation were sufficient "action[s]" within the meaning of 47 U.S.C. § 204(a)(3) and (a)(1) to preclude the *July 1997 Tariff* from being "deemed

---

[5] The Commission has reserved its calculation of the damages owed AT&T for a future proceeding. *Order*, 19 F.C.C.R. at 15,983 & n.47. We express no opinion concerning how the Commission should calculate damages for overearnings in a monitoring period in which some period is immunized from refund liability by lawful tariffs.

lawful," and that the *Reconsideration Order* did not restore the tariff's lawful status. *Order*, 19 F.C.C.R. at 15,988-92. Vitelco argues that whatever the effect of the *Suspension Order*, the *Reconsideration Order* rendered it a legal nullity. We agree.

The Commission's rule allows it "on its own motion, [to] *set aside* any action made or taken by it within 30 days from the date of public notice of such action." 47 C.F.R. § 1.108 (emphasis added). "Set aside" usually means "vacate." *See* BLACK'S LAW DICTIONARY 1404 (8th ed. 2004) (defining "set aside" as "to annul or vacate"); *cf. Checkosky v. SEC*, 23 F.3d 452, 491 (D.C. Cir. 1994) (op. of Randolph, J.) ("Setting aside means vacating; no other meaning is apparent."); *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("To vacate . . . means to . . . set aside.") (internal quotation marks and citation omitted). Under this interpretation, the *Reconsideration Order* vacated the *Suspension Order* and restored the *status quo ante*; the July 1997 Tariff would thus be "deemed lawful." *Cf. Ramallo v. Reno*, 114 F.3d 1210, 1214 (D.C. Cir. 1997). The result would be the same as if a court, finding the *Suspension Order* arbitrary or capricious, set it aside pursuant to the Administrative Procedure Act's directive in 5 U.S.C. § 706(2).

Neither the *Reconsideration Order* nor the Commission decision we are now reviewing offered any other interpretation of § 1.108. Counsel tells us that the Commission has used § 1.108 to take actions short of vacatur, such as changing "compliance dates" and modifying "the substantive requirements of previously adopted rules." Br. for Resp'ts 32. But as Vitelco points out, it is also true that the Commission has stated that setting aside pursuant to § 1.108 means vacating, as in *Stale or Moot Docketed Proceedings*, 19 F.C.C.R. 2527 (2004): "The Commission 'sets aside' an action within the meaning of section[] 1.108 . . . when it deliberately changes

course *by vacating* a decision that it later determines to have been ill-advised." *Id.* at 2531 (emphasis added). We may accept *arguendo* that the Commission properly uses § 1.108 to modify a prior order without vacating it. The question is whether it did so here.

In addition to suspending Vitelco's tariff for one day, the *Suspension Order* directed an investigation and ordered Vitelco to keep accurate accounts "of all amounts received that are associated with the rates that are subject to this investigation." *Suspension Order*, 13 F.C.C.R. at 5709; *see* 47 U.S.C. § 204(a)(1). The *Reconsideration Order* stated that the Commission "reconsider[ed] on [its] own motion [its] decision to suspend and investigate" Vitelco's tariff, 12 F.C.C.R. at 11,449; *see also id*. at 11,418, 11,445, 11,452, and "decline[d] to investigate" Vitelco's tariff. *Id*. at 11,449, 11,452. This necessarily signifies that the Commission revoked its order directing an investigation and it also signifies – because Vitelco's rates were no longer subject to investigation – that the Commission was rescinding its accounting order. Yet investigations and accounting orders are generally prerequisites to retroactive refunds. In the absence of any further Commission elaboration, the *Reconsideration Order* can only mean what it says: that the Commission's previous decision to suspend and investigate Vitelco's tariff was being "set aside" pursuant to § 1.108; that it ought not to have been made in the first place. The *Reconsideration Order* was prompted by Vitelco's two-page submission of information demonstrating that the Commission's concern about "cash working capital" – a component of the rate of return calculation – was unfounded. *See id.* at 11,449. The Commission's decision not to investigate indicates that the *Suspension Order* was a mistake and that the Commission corrected its error in the *Reconsideration Order*. There is no indication that the Commission meant simply to revise or modify this aspect of the *Suspension Order*, and there

is nothing to suggest that the *Reconsideration Order* had anything other than the effect of vacating the earlier order.

The Commission also concluded that the Common Carrier Bureau, which issued both the *Suspension Order* and the *Reconsideration Order* under delegated authority, lacked authority to restore "deemed lawful" status to Vitelco's *July 1997 Tariff. Order*, 19 F.C.C.R. at 15,911. Section 5(c) of the Communications Act, 47 U.S.C. § 155(c)(1), prohibits the Commission from delegating to one of its bureaus the power to conclude hearings on the lawfulness of rates under § 204(a)(2). But the Bureau did not purport to judge the lawfulness of Vitelco's tariff pursuant to a hearing. The Commission recognized as much. *See* Order, 19 F.C.C.R. at 15,991 ("The *Reconsideration Order* did not adjudge the lawfulness of Vitelco's rates, but merely decided not to investigate them."). Nowhere in the *Reconsideration Order* did the Bureau attempt to evaluate whether Vitelco's rates were "just and reasonable." Instead, the Bureau simply acknowledged a mistake and retracted its previous order. *See Reconsideration Order*, 12 F.C.C.R. at 11,449.

The Commission's argument – that the Bureau could permanently remove "deemed lawful" status from the tariff but was then powerless to correct what it admitted to be a mistake – is implausible. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). By the Commission's lights, the "investigation" into Vitelco's tariff was simply left open in derogation of the Commission's duty to complete tariff hearings within five months. *See* 47 U.S.C. § 204(a)(2)(A). The lawfulness of Vitelco's tariff would thus be left in "almost endlessly suspended animation." *ACS of Anchorage*, 290 F.3d at 413. The streamlined tariff provision was designed to avoid this very result. *See id.*

The Commission suggested at oral argument that Vitelco should have sought mandamus to compel the Commission to complete its investigation. But the Commission told Vitelco in the *Reconsideration Order* that there would be no investigation. Vitelco therefore had no reason to seek mandamus. Beyond the *Order* itself, the Commission gave all appearance of having abandoned the inquiry. After receiving an order entirely favorable to itself, Vitelco had no reason to pursue further proceedings or seek additional reconsideration.

By setting aside its previous order suspending and investigating Vitelco's *July 1997 Tariff*, the Commission restored the tariff to its legal *status quo ante*. The Commission's determination that Vitelco was liable for retroactive refunds for the period covered by the *July 1997 Tariff* was therefore arbitrary and capricious. 5 U.S.C. § 706(2)(A).

*     *     *

The petition for review with respect to the statute of limitations is denied. The petition with respect to the lawfulness of the *July 1997 Tariff* is granted and the Commission's order is vacated in part and remanded for further proceedings.

*So ordered.*